NOV 1 6 2009

JAMES N ~~~~~ Cler

By: ~~~~~~~

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARIANNE G. MILLER,

       Plaintiff,

   v.

AMERICAN EQUITY MORTGAGE INC,
COUNTRYWIDE BANK, N.A.
BANK OF AMERICA HOME LOANS
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC, and DOES 1 THRU 20

       Defendants.

Civil Action File
No.

**1 09-cv-3172**

**TCB**

## COMPLAINT FOR PERMANENT INJUNCTION
## AND EQUITABLE RELIEF

COMES NOW Plaintiff Marianne G. Miller, and for her Complaint against the

Defendants hereby complain and alleges as follows:

    Marianne G. Miller is a resident of Newton County, Georgia.

        Defendant Mortgage Electronic Registration Systems, Inc (" MERS") is a

type of business operating in the State of Georgia as a financial institution. MERS has not

legally registered to do business in the State of Georgia. (MERS has ONLY reserved a

name in Georgia). Defendant American Equity Mortgage is registered to do business in

Georgia and has a registered agent located at National Corporate Research, Ltd 3675

Crestwood Parkway, Suite 350 Duluth Georgia 30096. Defendant Countrywide Bank

N.A. has been dissolved by the FDIC and is now a part of Bank of America Home Loans.

Defendant Bank of America Home Loans is not registered to do business in this State.

The true names and capacities of Does 1 through 20, inclusive, whether
Individual, corporate, partnership, associate or otherwise, are presently unknown to
Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff alleges on
Information and belief that each Defendant is responsible in some manner for the events
Described herein and is liable to Plaintiff for the damages she has incurred. Plaintiff
Will show the true names and capacities of the Doe Defendants when they have been
Ascertained.

At all times mentioned herein, the Defendants, and each of them, were the
Agents, servants, representatives and/or employees of each of the remaining Defendants
and were acting within the course and scope of such agency or employment. The exact
terms and conditions of the agency, representation or employment relationships are
presently unknown to Plaintiff, but when the information is ascertained, leave of court
will be sought to insert the appropriate allegations.

## FACTUAL ALLEGATIONS

Ms. Marianne Miller has been victims of the mortgage Lending mess created
by Wall Street, Mortgage Lenders and Servicers, Defendant MERS, American Equity
Mortgage and various and assorted other vultures who are engaged in a pattern of
business  practices intended to deceive and mislead homeowners regarding application of
their payments and the amounts owing under notes and deeds of trust, and upon the
courts and county records offices regarding her ownership interest in the notes and deeds
of trust under which they are collecting fees and/or initiation foreclosures. The
Plaintiff has owned this home for many years. Ms. Miller applied for and

obtained a mortgage loan from Defendant American Equity Mortgage, Inc on

December 4, 2006. In connection with the making of that loan, Ms. Miller signed

a Deed of Trust for Defendant American Equity Mortgage who assigned the Security

Deed over to MERS as nominee, which was recorded in the Newton County, Georgia

records on December 18, 2006. A copy of the Security Deed is attached hereto and

Incorporated herein by reference as Exhibit "A" Security Deed contained

a false representation on its face when it represents that Defendant MERS

the Nominee under the Security Deed by assignment; it never had ownership or

Possession of the Note which is the obligation which is secured by the Security Deed.

This mortgage was funded by an undisclosed investor or group of investors

and this borrower was funded from proceeds of unregulated securities. Ms Miller is

the only note holder with a claim or right to the property. Everyone else is without any

loss, claim, or rights to foreclose the property, and all are superseded by the authority of

the holders of the mortgage backed securities. Even the Trustee on the Deed of Trust has

been superseded by at least two other Trustees. They don't have the note, they don't have

the full record of all the parties who collected fees or paid the principal or interest on the

Note and mortgage, and they don't really have any stake in the outcome of a foreclosure

If one is pursued because they didn't fund the loan or loss money.

Under the legal theories that purport to support non-judicial foreclosure, it

is said that non judicial foreclosure is a matter of private contract and not state action.

Thus, the theory goes, parties are free to contract amongst themselves for authority to sell

the property when the loan is reported by some party (alleging to be the beneficiary under

the Deed of Trust). So anything the Trustee does that is wrong is really a matter of breach

of contract, not violation of due process. If the Trustee on the Deed of Trust ( or if there

is no Trustee) lacks authority alleges that the loan is in default, and they are wrong or

acting wrongfully, it is a matter of private contract, not subject to the rules of civil

procedure governing the conduct of lawsuits in state or Federal Court. It is a contract

Authorizing "self help". Thus I conclude that the homeowner is equally entitled to utilize

self-help to preserve their interest in the real property. Of course filing a notice of intent

to preserve interest in real property, a notice of non-compliance with statute, or some

other instrument that clouds title could force the conversion to a judicial foreclosure

where the Trustee and beneficiary would be required to step forward and reveal the true

Holder in due course, account for the flow of funds paid thus far, etc. But adding the

force of Federal Law (TILA, RESPA and HOEPA), and applicable state laws on

deceptive lending practices, and applicable common law to the permission to use self-

help to foreclose. By filing a Qualified Written Request, Federal Law requires an answer

and Resolution. Barring that resolution, and using the common law doctrine of tacit

Procuration as a tool of enforcement at the end of the QWR, the homeowner has a legal

right under color of state and federal law to file an instrument or reconveyance as

Attorney in fact for the "beneficiary" of record___forcing the "pretender" to either back

off or prove their case.

## INFLICTION OF EMOTIONAL DISTRESS

**Plaintiff repeats and realleges each and every item and allegation above**
**as of fully and completely set forth herein.**

The Defendants' conduct with regard to Plaintiff constitutes the tort of

outrage and entitles Plaintiff to damages in an amount to be proven at the time of trial.

In the alternative, all of the corporate Defendants' conduct with regard to Plaintiff constitutes the tort of intentional infliction of emotional distress and/or reckless disregard for the infliction of emotional distress, which entitles Plaintiff to an award of damages in an amount to be proven at the time of trial.

## BREACH OF FIDUCIARY DUTY OR QUASI-FIDUCARY DUTY

**Plaintiff repeats and realleges each and every item and allegation above as if fully and completely set forth herein.**

The Defendant owe a fiduciary duty or quasi-fiduciary duty to Plaintiff, including but not limited to, providing Plaintiff with fair and honest disclosure of all facts that might be presumed to influence her in regard to its actions, including those facts favorable to a creditor and adverse to Plaintiff's interest as it relates to the mortgage loan. Those Defendants also had a duty to report truthful information on documents that they Recorded in the records of Newton County, Georgia and to act in conformity with the Laws of the State of Georgia and federal laws relating to mortgage servicing, and they Did not do so. In addition, Defendants owed the Plaintiff's a fiduciary duty or quasi-Fiduciary duty as the purported Trustee under the Deed of Trust. Defendant is not acting in conformity with Georgia law regarding who may be a Trustee or Assignee.

The Defendants did violate these fiduciary or quasi-fiduciary duties with respect to Plaintiff by the acts described in the Factual Allegations. At all times Mentioned herein, Plaintiff was the owner of the Home and financed the Home pursuant to a consumer Loan and Trust Deed secured by Promissory Note against Plaintiff's Home (the **"Loan(s)"**, **Note(s)"** and **Security Deed**(s). Section 1635 of TILA (15 U.S.C. §

1635), otherwise known as TILA 15 of the United States Codes, Commerce And Trade,

Chapter 41, Consumer Credit Protection, Subchapter 1, Consumer Credit Cost

Disclosure, Part B, Credit Transactions, states in pertinent part: A QWR was sent to the

Defendants on August 29, 2009 and on September 28, 2009. The Defendants did not

Comply with the QWR.

**"Sec. 1635. Right of rescission as to certain transactions**

(a) Disclosure of obligor's right to rescind

Except as otherwise provided in this section, in the case of any consumer credit
Transaction (including opening or increasing the credit limit for an open end credit plan)
in
Which a security interest, including any such interest arising by operation of law, is or
Will be retained or acquired in any property which is used as the principal dwelling of the
person to whom credit is extended, the obligor shall have the right to rescind the
transaction until midnight of the third business day following the consummation of the
transaction or the delivery of the information and rescission forms required under this
section together with a statement containing the material disclosures required under this
subchapter, which is later, by notifying the creditor shall clearly and conspicuously
disclose, in accordance with regulations of the Board, to any obligor in a transaction
subject to this section the rights of the obligor under this section. The creditor shall also
provide, in accordance with regulations of the Board, appropriate forms for the obligor to
exercise his right to rescind and any transaction subject to this section.


(b) Return of money or property following rescission

When an obligator exercises his right to rescind under subsection (a) of this section, he is
not liable for any finance or other charge, **and any security interest given by obligator,
including any such interest by operation of law, becomes void upon such a
rescission.** Within 20 days after receipt of a notice of rescission, the creditor **shall return
to the obligator any money or property given as earnest money, down payment, or
otherwise, and shall take any action necessary or appropriate to reflect the
termination of any security interest created under the transaction.** If the creditor has
delivered any property to the obligor, the obligor may retain possession of it. Upon the
performance of the creditor's obligations under this section, the obligor shall tender the
property to the creditor, except that if return of the property in kind would be
impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be
made at the location of the property or at the residence of the obligor, at the option of the
obligor. **If the creditor does not take possession of the property within 20 days after**

<u>tender by the obligor, ownership of the property vests in the obligor without</u>
<u>obligation on his part to pay for it.</u>
(f) **Time limit for exercise of right**

<u>An obligor's right of rescission shall expire three years after the date of consummation of</u>
<u>the transaction</u> or upon the sale of the property, whichever occurs first, notwithstanding
the fact that the information and forms required under this section or any other
disclosures required under this part have not been delivered to the obligor, except that if
(1) any agency empowered to enforce the provisions of this subchapter institutes a
proceeding to enforce the provisions of this section within three years after the date of
consummation of the transaction, (2) such agency finds a violation of this section, and (3)
the obligor's right to rescind is based in whole or in part on any matter involved in such
proceeding, then the obligor's right to rescission shall expire three years after the date of
consummation of the transaction or upon the earlier sale of the property, or upon the
expiration of one year following the conclusion of the proceeding, or any judicial review
or period for judicial review thereof, whichever is later.

(2) Tolerance for disclosures

Notwithstanding section 1605(f) of this title, and subject to the time period provided in
subsection(f) of this section, for the purposes of exercising any rescission rights after the
initiation of any judicial or nonjudicial Foreclosure process on the principal dwelling of
the obligator securing an extension of credit, the disclosure of the finance charge and
other disclosures affected by any finance charge shall be treated as being accurate for
purposes of this section if the amount disclosed as the finance charge does not vary from
the actual finance charge by more than $35 or is greater than the amount required to be
disclosed under this subchapter.

(3) Right of recoupment under State law

Nothing in this subsection affects a consumer's right of rescission in recoupment under
State law.

(4) Applicability

This subsection shall apply to all consumer credit transactions in existence or
consummated on or after September 30, 1995.

18) Rescission of the Loans, Notes & Trust Deeds under TILA and Reg Z is governed by
Section 226.15 of TILA (Reg Z) which states in pertinent part:
**§ 226.15 Right of rescission**

(a) **Consumer's Right to Rescind.**

(1)(i) Except as provided in paragraph (a)(1)!ii) of this section, in a credit plan in which a
security interest is or will be retained or acquired in a consumer's principal dwelling, each

consumer whose ownership interest is or will be subject to the security interest **shall have the right to rescind: each credit extension made under the plan; the plan is opened; a security interest when added or increased to secure an existing plan; and the increase when a credit limit on the plan is increased.**

(ii) As provided in § 125(e) of the act, the consumer does not have the right to rescind each credit extension made under the plan if such extension is made in accordance with a previously established credit limit for the plan.

(2) **To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail,** telegram, or other means of written communication. Notice is considered given when mailed, or when filed for telegraphic transmission, or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following the occurrence described in paragraph (a)(1) of this section that gave rise to the right of rescission, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. **If the required notice and material disclosures are not delivered, the right to rescind shall expire three years after the occurrence giving rise to the right of rescission,** or upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with § 125(f) of the act.

(4) When more than one consumer has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(d) **Effects of Rescission**

(1) **When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void, and the consumer shall not be liable for any amount, including any finance charge.**

(2) **Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.**

(3) **If the creditor has delivered any money** or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d) (2) of this section. **When the creditor has complied with that paragraph, the consumer shall tender the money** or property **to the creditor** or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. **If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.**"

20) Under the mandatory requirements of TILA, HOEPA and Reg Z, Defendant Accredited was required by law to deliver to Plaintiff, <u>within twenty days of the date of the TILA Rescission Notice:</u>

A) A monetary payment equal to the sum of all charges, costs and interest paid by or charged to Plaintiff in connection with the Loan(s), Note(s) and Trust Deed(s) (the **"Monetary Payment"**); and

B) A reconveyance of the Trust Deed(s) ( the **Trust Deed Reconveyance(s)").**
all of the preceding being collectively referred to herein as **"Accredited TILA, HOEPA & Reg z Obligations'.**

21) The twenty day statutory period for Defendant to fulfill Accredited's TILA, HOEPA and Reg Z Obligations, and to take delivery and possession of the Tender of the Original Loan Principal, expired without any action being taken by Defendant Accredited.

22) In accordance with the mandatory provisions of TILA and Reg Z:

<u>When and obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, **and any security interest given by the obligor, including and such interest arising by operation of law, becomes void upon such a rescission.**</u> **Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.** If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performances of the creditor's obligations under his section, the obligor shall tender the property to the creditor, except that if returns of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. <u>Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor.</u> **If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it."** [Section 1635 of TILA (15 U.S.C. § 1635]

Defendants American Equity Mortgage failed to give two copies of the Notice of

Cancellation to Plaintiff.

Defendants American Equity Mortgage, Countrywide Home Loans, and Bank of America

Charged fraudulent, false and previously undisclosed fees, charges and costs totaling in

excess of $ 50,000 to the amount alleged to be due on default or sale.

The full extent of the Undisclosed & Fraudulent Charges were never disclosed to Plaintiff

in any of the Loans, Notes or Deeds.

## COMPLAINT FOR TEMPORARY RESTRAINING ORDER ISSUARANCE OF A PRELIMINARY INJUNCTION

WHEREFORE, having set forth various causes of action against Defendants, Plaintiff prays for the following relief:

1.     That judgment is entered against the Defendants awarding Plaintiff damages in an amount to be proven at the time of trial;

2.     That the actions of the Defendant be determined to be unfair and deceptive business practices in violation of Georgia law, and that this Court award all such relief to Plaintiff as she may be entitled to under the Consumer Protection Act, including treble damages and as award of costs and attorney's fees if needed.

3.     That the Plaintiff be awarded consequential damages, including attorney's Fees (when one is hired ) incurred to bring this action and all other attorney's fees Incurred in defending against the actions of the Defendants described more particularly above, in an amount to be fully proved at the time of trial.

4.     That the Plaintiff be awarded fees and cost pursuant to the written agreements upon which the Defendants are attempting to rely;

5.     That the Plaintiff be awarded statutory damages available under any applicable statues;

6. That the Court awards such other relief as it deems just and proper.

7. That the Defendants are restrained from moving forward with any illegal action detrimental to the plaintiff.

Dated this ⟋⟋ day of November, 2009.

Marianne G. Miller      Pro Se

COMPLAINT FOR VIOLATION OF
THE CONSUMER PROTECTION ACT, etc.

## VERIFICATION

Personally appeared before me, the undersigned attesting officer, Marianne Miller

And state under oath that the facts contained in the foregoing Complaint for

Permanent Injunction and Equitable Relief are true and correct to the best of her

Knowledge.


Marianne G. Miller


Sworn to and subscribed before me

This 11ᵗʰ day of _November_, 2009

Notary Public

My commission Expires 10/16/13 .

MICHAEL J BROWN
NOTARY PUBLIC, DEKALB COUNTY, GEORGIA
MY COMMISSION EXPIRES OCTOBER 16, 2013